described have not been observed. *See United States v. Anderson*, 886 F.2d 215, 216 (8th Cir.1989) (per curiam) (district court skipped over category V without explanation); *United States v. Cervantes*, 878 F.2d 50, 53–54 (2d Cir.1989) (no explanation offered for selecting sentence fitting within category IV rather than categories II–III); *United States v. Miller*, 874 F.2d 466, 470–71 (7th Cir.1989) (skipping over category II without stating reasons); *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989) (no consideration of sentences using categories II–IV).

### III.

In this case, the first check may have been missed. The government now maintains that the presentence report incorrectly placed Allen in criminal history category V. A proper calculation of Allen's criminal history points under Guidelines § 4A1.1, the government reports to us on appeal, would have put Allen in the highest criminal history category of VI. This demonstrates, the government concludes, that the district court skipped over no category when it sentenced above the Guidelines.

We decline to affirm Allen's sentence based on what the district court might have done had the presentence report designated a different criminal history category. The second as well as the first check point warrants focused attention, for the record does not inform us whether and why the court found inadequate the nine to fifteen month range specified for category VI. Nor does the record show, concerning the third check point, that the district court found Allen's criminal history significantly more serious than that of most category VI defendants, and, on that account, departed from the Guidelines. We recognize that, on resentencing, "the result may turn out to be about the same, but the Guidelines compel a particular procedure and the exercise of the sentencing judge's discretion within those parameters." *Miller*, 874 F.2d at 471.

For the reasons stated, we vacate the sentence and remand for resentencing con-

sistent with this opinion. The district court should (1) identify the correct Guidelines category, (2) consider whether upward adjustment *within* the Guidelines criminal history categories is adequate and, if such adjustment is inadequate, (3) state why a sentence longer than one allowed by the top criminal history category is in order.

*It is so ordered.*

**DRG FUNDING CORPORATION, Appellant,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT.**

**No. 89–5100.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 5, 1990.

Decided March 20, 1990.

As Amended May 10, 1990.

Mary G. Clark, with whom John K. Villa, Washington, D.C., was on the brief, for appellant.

Nathan Dodell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Gershon M. Ratner, Associate Gen. Counsel, Howard M. Schmeltzer, Asst. Gen. Counsel, Washington, D.C., and Michael T. Robinson, Atty., U.S. Dept. of Housing and Urban Development, were on the brief, for appellees.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant, DRG Funding Corporation ("DRG"), is a mortgage banking institution which provided a number of multi-family housing mortgages coinsured by the Secretary of Housing and Urban Development. Some of these loans went into default. DRG submitted requests for insurance proceeds to be paid in debentures with interest on the debentures running from the date of the loans' default. HUD refused to pay interest on the debentures from the date of default and instead stated that it would pay interest only from the date that HUD settled the insurance claims. The district court held that the plain meaning of HUD's applicable regulations, requiring payment of interest from date of default, could be disregarded because it would lead to results contrary to the overall statutory and regulatory scheme. It therefore granted HUD's motion for summary judgment. We reverse and remand.

## I.

Section 207 of the National Housing Act, 12 U.S.C. §§ 1701–1750, authorizes HUD to insure the repayment of mortgages made by private lenders on various types of residential real estate. *See* 12 U.S.C. § 1713. Until 1974, the Act provided only for "full insurance" of these mortgages, whereby HUD fully compensates lenders for the loss they suffer upon defaults on their insured mortgage loans, in the form of debentures bearing interest from the date of default.[1] *See* 12 U.S.C. § 1713(g) & (i).

In 1974, Congress enacted section 244 of the National Housing Act, 12 U.S.C. § 1715z–9, authorizing HUD to "coinsure" mortgage loans eligible for insurance under other provisions of the Act. When a loan is coinsured, the Government and the lender share the risk of loss on the insured

---

**1.** Even under HUD's "full insurance" programs, the lender is responsible for a small deductible, equal to one percent of the unpaid amount of the mortgagor's principal obligation. *See* 12 U.S.C. § 1713(g).

mortgage. The lender must be responsible, however, for at least 10% of any such loss. *See* 12 U.S.C. § 1715z–9(a)(1). HUD elected to use that authority in 1978 to coinsure mortgages made for the purpose of purchasing or refinancing multi-family rental projects. HUD promulgated regulations governing these loans at 24 C.F.R. Part 255, including regulations dealing with "the manner of calculating insurance benefits" paid to coinsurance lenders. *See* 43 Fed.Reg. 43676 (1978).

The coinsurance regulations offer lenders the option of receiving insurance benefits upon default of an insured loan either in cash or in the form of interest-bearing debentures. They state that "[i]f the lender requests debentures, all of the provisions of 24 CFR 207.259(e) will apply." 24 C.F.R. § 255.819 (1988). And section 207.-259(e) of the regulations states, in turn, that debentures shall be issued *as of the date of default* by the borrower and bear interest from that date. *See* 24 C.F.R. § 207.259(e)(1) & (6). After the start of this litigation, HUD amended regulation 255.819 to state that "[i]n the event that the lender requests debentures, all of the provisions of 24 CFR 207.249(e) will apply, *except that the debentures will be dated as of the date of settlement of the claim.*" *See* 53 Fed.Reg. 33734, 33755–56 (1988); 24 C.F.R. § 255.819 (1989) (emphasis added).[2]

DRG filed suit in the district court to obtain a declaratory judgment resolving the dispute between it and HUD concerning when interest on debentures issued in settlement of coinsured claims begins to run. Appellant complained that as a result of HUD's determination to pay interest on DRG's debentures only from date of settlement rather than date of default, it would not be able to meet the Government National Mortgage Association's ("GNMA") net worth requirements for participating in the mortgage backed securities market. DRG therefore filed motions for a temporary restraining order and for a preliminary injunction against GNMA to prevent

GNMA from terminating it from GNMA-administered programs.

The district court granted the temporary restraining order and the preliminary injunction, but subsequently, upon reflection, granted HUD's motion for summary judgment.

## II.

It is important at the outset to state what this case is not about. We are not faced with the familiar argument from the Government that HUD's regulations are ambiguous, and that therefore HUD's interpretation of them is entitled to deference. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). No, sections 255.819 and 207.259(e) are all too clear. Read together those provisions wholly support appellant's contention that it is entitled to interest from the date of loan default on the debentures HUD must issue to satisfy the insurance obligations. But the Government asserts that those provisions are inconsistent with the general thrust of the entire body of HUD's coinsurance regulations and, furthermore, are contrary to the purpose of the legislation under which HUD's insurance programs are authorized. As such, the language of the relevant provisions of the regulations should be disregarded as a drafting error that, if literally followed, causes an absurd or odd result. The Government relies on *Public Citizen v. United States Dep't of Justice,* —— U.S. ——, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) and *Church of the Holy Trinity v. United States,* 143 U.S. 457, 460, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), which held that a federal court reviewing the language of an act of Congress is not bound by the plain language if the outcome is so odd as to indicate that interpretation is contrary to congressional intent. The Government would have us apply that doctrine here to an interpretation of HUD's regulation.

Following the literal language of section 255.819 will produce an odd result, we are told, because it grants DRG "double inter-

---

**2.** Unless otherwise noted, all references to the C.F.R. are to the 1988 edition, which contains the version of the regulations governing this appeal.

est" (*i.e.*, both the unpaid mortgage interest and the debenture interest) and threatens to turn a coinsurance program into a full insurance one. This anomaly appears because the insurance benefits owed to the lender under the coinsurance program include 85% of the principal balance *plus* mortgage interest from the date of default. And if the plain language of sections 255.-819 and 207.259 is followed, then DRG would get both the mortgage interest on the principal as well as debenture interest (albeit at a likely different rate) on the sum of the unpaid principal and the unpaid mortgage interest from the date of default, which understandably seemed to the district judge to be something of a windfall. Moreover, the longer the delay between default and date of settlement, because of the payment of "double interest," the closer one gets to full insurance rather than coinsurance.

Appellant points out, however, that HUD could have avoided much of the difficulty under the regulation by simply expediting settlement of the claims and that, in any event, there is nothing in the coinsurance regulations to indicate that this result—the payment of so-called double interest— whether thought desirable now that a case has arisen, was meant to be avoided. The Government points to no preamble to the regulations nor to any other material issued by HUD at the time the regulation was promulgated that, like legislative history surrounding a statute, could be used to buttress its claim of drafting error.

If the regulations were inconsistent with their authorizing legislation—in effect *ultra vires*—HUD would have a powerful argument because estoppel does not normally—if ever—apply against the Government. *See ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C.Cir.1988). But we cannot so conclude because the statute itself is ambiguous. Indeed, for the full insurance program, section 207(i) of the National Housing Act requires that "debentures issued under this section ... shall be dated as of the date of default ... *and shall bear interest from that date*" (emphasis added). DRG argues that section 207 is the only applicable section *au-*

*thorizing* HUD to provide any kind of mortgage insurance. Section 244, which directly addresses coinsurance, states:

> In addition to providing insurance *as otherwise authorized under this chapter,* and notwithstanding any other provision of this chapter inconsistent with this section, the Secretary, upon request of any mortgagee and for such mortgage insurance premium as he may prescribe ..., may insure and make a commitment to insure under any provision of this subchapter any mortgage, advance, or loan otherwise eligible under such provision, pursuant to a co-insurance contract....

12 U.S.C. § 1715z-9(a) (emphasis added). Accordingly, appellant contends that section 244 does not provide separate mortgage insurance authority but rather "piggy backs" on section 207, which is the actual authorizing provision. HUD was therefore statutorily obligated to pay debenture interest from the date of default. The Government, on the other hand, claims that the subsequently enacted section 244 of the National Housing Act, which permits coinsurance "in addition to" and "notwithstanding" the Act's provision of insurance under other sections, is an independent grant of authority to provide insurance and that section 207 is therefore not applicable to coinsurance. We think that since section 244 permits HUD to prescribe regulations governing the terms of coinsured contracts, including "the manner of calculating insurance benefits ... and other similar matters....," HUD *now* reasonably construes section 244 as authorizing HUD to disregard 207(i) for its coinsurance program, as it has done in its amended regulation. But—and this is HUD's difficulty—if HUD's original regulation had been challenged as an unreasonable interpretation of the statute, we would have rejected that challenge. Although we agree with HUD that the interpretation of the statute it now presses is preferable, it is impossible to say under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), that the other interpretation, implicitly reflected in its original regulation, is unreasonable.

Nor is there any other provision of the statute which expressly bars the "double interest" about which the Government is here so concerned. To be sure, under the full insurance program mortgage interest after default is not paid so that the double interest problem does not ever arise. The statute specifically provides for those items that are to be included as benefits, and mortgage interest is not included. But as the Government itself has urged (to avoid the impact of 207(i)), HUD has greater authority to regulate the manner of calculating insurance benefits paid to coinsurance lenders under section 244 than it has under its full insurance program.

The statute does, as the Government further argues, mandate that a coinsured lender bear at least 10% of the insured loss when a borrower defaults. *See* 12 U.S.C. § 1715z–9(a)(1). DRG presents alternative constructions of the regulation that avoid conflict with that statutory provision. It relies primarily on its contention that HUD may cap the amount of debenture interest it pays, on a case-by-case basis, to the extent necessary so as not to permit recovery by the lender of an amount in excess of 90% of its loss on the mortgage loan. In other words, "double interest" is permitted up to the point where interest plus the principal payment equals 90% of the loss. But it does not concede that, in calculating the loss borne by the lender under section 244, *interest* payments are even relevant.[3] We think that DRG's primary argument is more persuasive, and that, interpreting the regulation to require a cap on interest where necessary, poses no inconsistency with the statute.

Finally, the Government claims that section 520(a) of the Act, which requires that

cash settlements paid at the lender's option "shall be in an amount equivalent to the face amount of the debentures that would otherwise be issued plus an amount equivalent to the interest which the debentures would have earned," 12 U.S.C. § 1735d(a), would be violated if the regulations were interpreted as written. We think that this argument is easily rejected because it assumes its conclusion; that somehow the cash payment would not include the same interest payments that are required to be paid if debentures are issued.

\* \* \* \* \* \*

In sum, the Government does not argue that its regulations as originally written are an impermissible interpretation of the statute under *Chevron*, nor do we think, even if it had, that we could so conclude. If, then, the plain language of the regulations upon which appellant relies is a permissible interpretation of the statute, how can that interpretation be called "odd," still less "absurd"? Assuming, arguendo, that the *Holy Trinity* doctrine of statutory interpretation applies to construction of regulations, it could not possibly be invoked to challenge a regulation that would fall within *Chevron's* zone of deference as a permissible interpretation of the governing statute. Otherwise, no one trying to tailor his behavior to an understanding of the regulation could anticipate the Government's interpretation. We therefore reverse and remand for proceedings consistent with this opinion.

*It is so ordered.*

---

**3.** HUD argues that section 255.819 conflicts with coinsurance regulations it has issued to govern the calculation of benefits. Under those regulations, HUD takes the unpaid mortgage balance, makes certain deductions from and allowances to it, and then pays the lender 85% of the resulting amount. *See* 24 C.F.R. §§ 255.820–822. HUD maintains that these benefits calculation provisions limit the amount that it may pay out to claimants and that this limit may not be increased through the payment of debenture interest on top of mortgage interest for the period between default and settlement. Those

provisions may, however, be read to determine the amount of the coinsurance claim on which the interest on the debenture runs rather than to determine the amount of the total payment (claim plus interest) that the coinsurer can receive. This is the interpretation suggested by the existence of section 255.819 as a separate section mandating payment of debenture interest from date of default. The Government does not suggest that the regulations are ambiguous, either in part or as a whole, on the question of the date from which debenture interest is paid.