Louise WOERNER, et al., Plaintiffs,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION, et al.,
Defendants.

Civ. A. No. 89–2674.

United States District Court,
District of Columbia.

June 15, 1990.

I. Michael Greenberger, Shea & Gardner,
Washington, D.C., for plaintiffs.

Jeffrey T. Sprung, Asst. U.S. Atty.,
Washington, D.C., for defendants.

MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Presently pending before the Court is
plaintiffs' motion for preliminary injunc-
tion. Oral argument on the motion was
heard on June 11, 1990. Having carefully
considered the motion, defendants' opposi-
tion, plaintiffs' reply, the administrative
record, the argument of counsel, and the
entire record in this case, plaintiffs' motion
shall be granted in part and denied in part.

## I. BACKGROUND

Plaintiffs are Louise Woerner, and L. Woerner, Inc. d/b/a HCR (collectively, "HCR"). HCR is a participant in the Small Business Administration's ("SBA") 2[8](a) program for socially and economically disadvantaged small businesses.[1] HCR brought this action on September 26, 1989 and filed an amended complaint on December 22, 1989, alleging that SBA and certain of its officers and employees acted arbitrarily and capriciously and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, violated the Business Opportunity Development Reform Act of 1988 and its implementing regulations, and intentionally discriminated against HCR in the administration of SBA's 2[8](a) program because of the race and sex of Louise Woerner in violation of the Small Business Act, SBA's regulations, certain civil rights statutes, and the Constitution.

More specifically, HCR asserts that beginning in 1988, SBA engaged in a concerted attempt to injure HCR by (1) frustrating HCR's self-marketing efforts to obtain 2[8](a) contracts from federal procuring agencies, (2) unduly delaying the processing of contract documents and modifications, and (3) refusing for an inordinate length of time to approve for HCR's business plan additional Standard Industrial Classification ("SIC") Codes. Plaintiffs' amended complaint seeks declaratory relief and an injunction granting HCR an additional year of eligibility in the 2[8](a) program, disqualifying certain SBA officials from participating in decisions relating to HCR, and requiring timely processing of SIC Code requests and other contract approvals.

Plaintiffs' motion for preliminary injunction does not concern the discrimination claims, nor does it seek an order compelling defendants to grant plaintiffs an additional year of eligibility in the 2[8](a) program or the disqualification of certain SBA officials. Rather, by the instant motion, plaintiffs seek the following specific relief:

(1) an order requiring SBA to decide within 15 working days after receiving an offering letter identifying a requirement[2] on behalf of HCR whether it will accept or reject that requirement for the 2[8](a) program with an explanation of the basis for that decision;

(2) an order enjoining SBA from challenging reasonable SIC Codes designated by federal procuring agencies for requirements offered on behalf of HCR unless SBA

(a) makes a written finding that the SIC Code is clearly incorrect and explains the basis for that decision, and

(b) files an appeal to the head of the procuring agency within 15 working days after receiving the offering letter; and

(3) an order directing SBA to immediately accept into the 2[8](a) program two requirements recently offered to SBA on behalf of HCR (one by NASA and the other by the Department of Labor) because SBA has waived its right to challenge the SIC Codes for those requirements.

## II. DISCUSSION

■ A preliminary injunction may be granted only when the plaintiff demonstrates (1) a substantial likelihood of suc-

---

**1.** The Small Business Act, Sections 2[7](j) and 2[8](a), 15 U.S.C. §§ 636(j), 637(a), established the Minority Small Business and Capital Ownership Development Program, commonly known as the 2[8](a) program. Admission into the 2[8](a) program is based upon a determination that a bona fide small business is owned and controlled by individuals who are socially and economically disadvantaged. 13 C.F.R. § 124.1(b)(1). HCR was admitted into the 2[8](a) program on December 12, 1980. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("Plaintiff's Motion"), at 8. Under the

Business Opportunity Development Reform Act of 1988, Pub.L. No. 100–656, 102 Stat. 3853, *et seq.* ("Reform Act"), 2[8](a) program participants receive a nine-year fixed program participation term. 15 U.S.C. § 636(j)(15). HCR is due to "graduate" from the 2[8](a) program on October 12, 1990. *See* Plaintiffs' Motion, at 9, 31.

**2.** A "requirement" is a contract opportunity from a Federal procuring agency to acquire articles, equipment, supplies, materials, or construction work. 13 C.F.R. § 124.100.

cess on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *accord, Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958). This test is not a wooden one, for as our court of appeals has noted, relief may be granted "with either a high probability of success and some injury, or *vice versa*." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985) (per curiam) (emphasis in original). *See also Holiday Tours*, 559 F.2d at 843.

### A. Likelihood of Success on the Merits

#### 1. *Challenges to SIC Codes*

Under the Small Business Act, 15 U.S.C. §§ 632(a), 634(b)(6), SBA is authorized to determine which business enterprises are to be designated "small business concerns" within an industry. 13 C.F.R. § 121.102. SIC Codes, four-digit numbers which classify and define activities by industry category,[3] are used by SBA to determine whether a participating 2[8](a) firm can perform specific work under a requirement submitted to the 2[8](a) program by a procuring agency. Once admitted to the 2[8](a) program, a firm is only permitted to perform 2[8](a) contracts which are classified under the firm's approved SIC Codes.[4] The SIC Codes also identify the maximum number of employees or annual receipts allowed for a firm to be considered "small." If a firm grows too large for the limits of a particular SIC Code, it is deemed a large business for that code and is there-

fore ineligible for 2[8](a) contracts containing that specific SIC designation.

A requirement for possible award may be identified by SBA, a 2[8](a) firm, or the procuring agency. When a procuring agency offers a requirement to SBA for inclusion into the 2[8](a) program, it designates a SIC Code for the work to be performed. In order to accept a requirement into the 2[8](a) program, SBA must verify the appropriateness of the SIC Code designation assigned by the procuring agency.

Plaintiffs assert that SBA has repeatedly challenged the SIC Codes assigned to requirements offered on behalf of HCR by various federal procuring agencies. Plaintiffs contend that in so doing, SBA has violated its own regulation, 13 C.F.R. § 124.308(b), which provides:

> So long as the SIC code assigned to the requirement by the procuring agency contracting officer is reasonable, the SIC Code will be accepted by SBA.... If SBA and the procuring agency are unable to agree as to the proper SIC code designation for the requirement, SBA may refuse to accept the requirement for the [2]8(a) program, or appeal the contracting officer's determination to the head of the agency pursuant to § 124.320, or [SBA may] file a SIC code appeal to SBA's Office of Hearings and Appeals.

Plaintiffs also point to the preamble to section 124.308(b) which states that SBA will only refuse to accept a requirement or appeal to its Office of Hearings and Appeals or the federal procuring agency head when the SIC Code designated is "clearly incorrect." 54 Fed.Reg. at 34703.[5]

Plaintiffs point to a number of past requirements for which they assert SBA has refused to defer to the reasonable SIC Codes designated by contracting officials for requirements obtained through HCR's

---

**3.** *See* 13 C.F.R. § 121.601.

**4.** A firm can perform contracts under other SIC Codes but not under the 2[8](a) program.

**5.** Our court of appeals has stated in dicta that the preamble to a federal regulation might, like legislative history surrounding a statute, be used to determine the agency's intent in promulgat-

ing the regulation. *See DRG Funding Corp. v. Secretary of Housing and Urban Development*, 898 F.2d 205, 208 (D.C.Cir.1990) ("The Government points to no preamble to the regulations nor to any other material issued by HUD at the time the regulation was promulgated that, like legislative history surrounding a statute, could be used to buttress its claim of drafting error").

self-marketing efforts. Among the agencies which have offered such requirements are the Health Care Financing Administration ("HCFA"), the United States Marine Corps, the Federal Emergency Management Agency ("FEMA"), the Department of Labor ("DOL"), the Department of Transportation ("DOT"); and the National Institute for Occupational Safety and Health ("NIOSH").[6] SBA's actions with respect to these contracts, a detailed discussion of which is not necessary here, form the basis of plaintiffs' instant request for a preliminary injunction enjoining SBA from challenging reasonable SIC Codes designated by federal procuring agencies for requirements offered on behalf of HCR unless SBA (a) makes a written finding that the SIC Code is clearly incorrect and explains the basis for that decision, and (b) files an appeal to the head of the procuring agency within 15 working days after receiving the offering letter.

According to plaintiffs, SBA's actions with respect to these requirements are not consistent with Congress' express intent in enacting the Reform Act that SBA should not spend too much time adjudicating technicalities over SIC Codes.[7] In addition, plaintiffs contend that SBA has refused to give the procuring agencies' SIC Code designation the deference it is due as reflected in the regulation's requirement that SBA accept a SIC Code that is "reasonable," and the preamble's statement that SBA should accept a SIC Code unless it is "clearly incorrect." [8]

Defendants contend that since 1988 (when plaintiffs allege that SBA's delay tactics began), a pattern has developed in which procuring agencies initially select a SIC Code for a requirement for which HCR was nominated, but later change the SIC designation, apparently to accommodate HCR, after the procuring agency finds out that HCR is not eligible to perform the requirement under the original SIC Code.[9] Furthermore, defendants contend that this court should pay considerable deference to SBA's interpretation of its own regulations, i.e., whether a SIC code submitted by a procuring agency is "reasonable."

■ Regardless of whether or not SBA's actions with respect to the above requirements were proper, the difficulty with the relief that plaintiffs request—that SBA be ordered to accept all "reasonable" SIC

---

6. *See* Plaintiffs' Motion, at 14, 17–25.

7. *See* H.R.Rep. No. 74, 101st Cong., 1st Sess. 3 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin.News 19 ("[I]n keeping with the intent underlying section 303(g) of the Business Opportunity Development Reform Act, SIC codes should be afforded generously and modified liberally to reflect a logical progression of company growth. At the present time far too much time and energy is spent adjudicating such technicalities."). Prior to enactment of the Reform Act, the House Committee on Small Business received complaints that SBA was unreasonably restraining the growth of 2[8](a) firms into additional SIC areas and concluded that SBA may have been "overly restrictive" in granting requests for additional SIC Codes. The Committee therefore concluded that "more flexibility needs to be exercised in approving SIC Codes in order to afford the 2[8](a) firm a reasonable opportunity to develop." H.R.Rep. No. 460, 100th Cong., 1st Sess. 40 (1987).

8. Plaintiffs also argue that SBA is causing undue delay by appealing SIC Code designations to its Office of Hearings and Appeals ("OHA"). One month after this action was filed, SBA appealed the SIC Code designations for the HCFA and the DOT requirements to OHA. Plaintiffs make much of the fact (which SBA has admitted in answers to interrogatories) that these are the only two SIC Code appeals that SBA has *ever* filed to its OHA. Although the HCFA and DOT requirements were accepted into the 2[8](a) program on June 21 and 23, 1989, respectively, SBA waited more than five months before filing its SIC Code appeals. Interestingly, the appeals were filed *after* SBA had already accepted the requirements into the 2[8](a) program. OHA dismissed the HCFA appeal, noting that SBA's regulations contemplate that acceptance of a requirement for the 2[8](a) program means acceptance of the SIC Code designated by the procuring agency. Plaintiffs' Exhibit 3, at 10–12. SBA recognizes this as well, as is evidenced by a Notice sent to its regional and district officials: "Acceptance of a requirement includes concurrence in the assigned SIC Code." Plaintiff's Exhibit 5.

9. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp."), pp. 8–13. More specifically, defendants assert that the SIC Codes were changed to ones with higher annual receipt limitations, thereby allowing HCR to perform the requirements.

Codes—is that it merely begs the question. That is, directing SBA to approve all SIC Codes that are "reasonable" merely re-states what is already required by regulation while offering no guidance whatsoever as to what is or is not "reasonable." A determination of whether a SIC Code is "reasonable" within the meaning of SBA's regulations can only be made on a case by case basis. The contracts referred to above about which plaintiffs complain are no longer before SBA for determination as to whether the designated SIC Codes are "reasonable." Until such time as SBA takes some action on a requirement that has been offered by a federal procuring agency, there is no case or controversy to be adjudicated. This request for relief is therefore denied.

### 2. *Delays in Processing*

Plaintiffs originally alleged that with respect to two requirements submitted to SBA, the first, a requirement offered by the National Aeronautics and Space Administration ("NASA") on March 9, 1990 for support of NASA's Occupational Health Office and the second, a requirement offered by the Department of Labor ("DOL") on April 12, 1990 for a report on special coordinated discretionary projects, SBA has violated 13 C.F.R. § 124.308(d), which provides:

> Upon receipt of the procuring agency's offer, SBA will determine whether it will accept the requirement for the [2]8(a) program. SBA's decision whether to accept the requirement will be transmitted to the procuring agency in writing within 15 working days of receipt of the offer, unless SBA requests, and the procuring agency grants, an extension.

Rather than accept or reject the NASA and DOL requirements within the 15 day time period, SBA has made additional requests for information from these agencies. Plaintiffs allege that SBA has made these requests purposefully to cause undue

delay to HCR. Defendants, however, assert that SBA has sought additional information from NASA and DOL "to verify the appropriateness of the SIC codes submitted by them," and that SBA expects a final decision on whether to accept or reject these requirements or to appeal them to OHA "shortly." [10]

At the time they filed their motion for preliminary injunction, plaintiffs sought two forms of relief. First, plaintiffs requested an order requiring SBA to decide within 15 working days after receiving an offering letter identifying a requirement on behalf of HCR whether it will accept or reject that requirement for the 2[8](a) program with an explanation of the basis for that decision. Second, because the 15 day period had expired with respect to both the NASA and DOL requirements, plaintiffs requested that SBA be ordered to immediately accept these requirements into the 2[8](a) program.

Since the filing of plaintiffs' motion for preliminary injunction, a development has occurred which prevents the Court from granting part of the relief that plaintiffs originally sought. Specifically, on June 6, 1990, DOL cancelled the requirement it had previously submitted to SBA on April 12, 1990 and withdrew it from the 2[8](a) program.[11] Therefore, the Court is unable to order SBA to accept this requirement into the 2[8](a) program. Nevertheless, because SBA's actions with respect to both the DOL and NASA requirements are similar, in determining whether SBA should be ordered to immediately accept the NASA requirement into the 2[8](a) program, an examination of both the NASA and DOL requirements is useful.

The NASA requirement was offered to SBA on March 9, 1990.[12] In that offer, NASA requested an expedited response from SBA by April 2, 1990 because NASA had established that date as a target date for release of a request for proposals should the requirement not be accepted

**10.** Opp., at 13.

**11.** The Court was notified of this development at the hearing on the instant motion. *See* Affi-

davit of Barbara A. Robinson (June 11, 1990), ¶ 2.

**12.** Administrative Record ("A.R."), p. 534.

into the 2[8](a) program in order to have a contract in place by September 3, 1990. Fifteen working days from March 9, 1990 would have been March 30, 1990. In a telephone conversation between Richard Kall, NASA's contracting officer, and Laurence Gaunt, Assistant Regional Administrator for Minority Small Business/Capital Ownership Development for SBA, Region II, on March 28, Gaunt requested, and Kall agreed to provide, additional information to SBA. That telephone conversation was confirmed in a letter dated April 5, 1990 from Gaunt to Kall.[13] Gaunt stated that "[b]efore we [SBA] make a final determination on this matter, we would like to review the complete rationale for your decision. We look forward to your early written response to this letter, so that we may expedite the processing of this requirement."[14] NASA responded to this request on April 16, 1990. On April 17, 1990, SBA requested a cost breakdown for each task of the requirement. After NASA responded to this request, SBA requested the actual dollar figures for each task on May 4, 1990. As of this date, SBA has not notified NASA as to whether its requirement has been accepted or not.

The Department of Labor offered a requirement to SBA on April 12, 1990. Fifteen working days from April 12, 1990 would have been May 3, 1990. On April 27, 1990, DOL's contracting officer was called by Debra Libow, an official in SBA's New York Regional Office, who requested further cost information about the requirement. That same day, DOL provided percentage estimates for each task stated in the requirement. Nevertheless, on May 3, 1990, SBA notified DOL that this information was inadequate. Having received no written decision from SBA, DOL recently withdrew this requirement from the 2[8](a) program.[15]

■ It is well-settled that agencies are required to follow their own regulations. *Morton v. Ruiz*, 415 U.S. 199, 234, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Vitarelli*

*v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 373, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957). The 15 day requirement of section 124.308(d) is mandatory: "SBA's decision whether to accept the requirement *will* be transmitted to the procuring agency in writing within 15 working days of receipt of the offer ..." (Emphasis added). The record is undisputed that SBA did not notify NASA or DOL within 15 working days of receipt of the offers as to whether their requirements were accepted or not. The only exception to the requirement of section 124.308(d) that SBA notify a procuring agency in writing within 15 working days after it receives an offer as to whether it will accept the requirement into the 2[8](a) program is when "SBA requests and the procuring agency grants an extension." Defendants conceded at oral argument on the instant motion that SBA did not make an explicit request for an extension of time. It is defendants' position, however, that SBA's initial requests to NASA and DOL for further information, made before the 15 working day periods had expired, constitute "requests" for an extension of the 15 day period and that NASA's and DOL's compliance with and failure to object to the requests for information, constitute "grants" of the requests for extension of time.

Defendants' argument is unpersuasive. To begin with, such a construction is totally at odds with the plain language of the regulation. The regulation permits SBA to enlarge the 15 day period by requesting an "extension." SBA did not request "extensions" here; rather, SBA made requests for additional information. Such requests cannot constitute the request for an extension contemplated by section 124.308(d). Under defendants' reasoning, SBA could make repeated requests for information from procuring agencies without setting any deadline for a final decision to be reached. The 15 day period could there-

---

13. A.R. at 543–44.

14. *Id.* at 544.

15. As noted earlier, DOL had to award the contract by June 30, 1990 or all of the funds would have been cancelled.

fore be extended indefinitely, or as occurred here with DOL, until the procuring agency is left with no alternative but to withdraw the requirement from the 2[8](a) program entirely due to the agency's own time constraints for awarding the contract.

In addition, defendants' reasoning is flawed in that a procuring agency may not in all instances believe that a request for further information is a request for extension of time under section 124.308(d). A request by SBA for further information from a procuring agency will not in all instances mean that SBA cannot meet the 15 working day deadline. For instance, if SBA makes a request for further information on the tenth working day, the procuring agency could conceivably provide SBA with the information on that same day, or the eleventh day, or any day up to and including the fifteenth day. SBA would still have time to make a decision as to whether to accept the requirement within the fifteen day period.

Furthermore, section 124.308(d) places the burden on SBA in the first instance to make a request to the procuring agency for an extension. To assert that the onus is on the procuring agency to object to the agency's request for further information (as the defendants assert here) and that a failure to do so can be equated with a "grant" of a request for extension of time, improperly shifts the burden from SBA. The request for an extension of time contemplated by section 124.308(d) is a formal request for extension of time which cites the regulation itself so that the procuring agency has actual notice that SBA is seeking an extension of time under section 124.308(d). Not even a strained reading of section 124.-308(d) could support the position advanced by defendants here. The regulation means what it says—the fifteen day period can only be extended by a request for additional time by SBA and a grant of that request from the procuring agency. SBA requests for additional information and a procuring agency's delivery of the information without objection do not constitute such a request and grant for an extension of time.

Nonetheless, defendants contend that section 124.308(d) was adopted as a "housekeeping rule" to assist procuring agencies, not 2[8](a) firms, and was not intended to give procedural rights to those firms. Accordingly, defendants maintain that SBA may exceed the 15 day period while it attempts to resolve a dispute with a procuring agency over the appropriate SIC Code for a given requirement. They believe that because the additional time is being used for a purpose beneficial to the 2[8](a) program, i.e., to amicably resolve the dispute so that the requirement can be accepted into the 2[8](a) program and assist an economically and socially disadvantaged 2[8](a) concern, that the fifteen day period is not an absolute time limit. The Assistant Regional Administrator for SBA, explains with respect to the NASA and DOL requirements that "the 15–day deadline was exceeded because SBA and the procuring agencies were unable to agree upon the appropriate SIC code. Rather than reject the requirement offerings and thereby lose them for the program, SBA is attempting to work with the agencies to reach agreement on reasonable SIC codes for the procurements."[16] It is defendants' position that Congress did not intend SBA to merely accept every SIC code designated by a procuring agency and that the additional time beyond the 15 days allows SBA to make a reasoned and thorough determination which benefits all interested parties.

In support of their argument, defendants rely on *Information Systems & Networks Corp. v. Abdnor*, 687 F.Supp. 674, 682 (D.D.C.1988). In that case, plaintiffs lost an 2[8](a) contract with the Department of Navy for which they had been recommended when SBA decided to release it from the 2[8](a) program, as provided by an internal SBA standard operating procedure ("SOP"), to a graduating 2[8](a) firm. The main issue resolved by the court was whether the SOP was a substantive rule requiring full notice and comment under the APA. The court held that it was a non-binding general statement of policy, not a rule and that therefore it was exempt

---

16. Gaunt Aff., ¶ 9 (Defendants' Exhibit 2).

from the notice and comment procedures set forth in the APA. The court also addressed plaintiffs' argument that SBA had denied plaintiffs procedural due process when it failed to respond within ten working days to the offer letter of the Navy.[17] The court rejected this constitutional claim, concluding that the additional time beyond ten days was utilized by SBA for the benefit of the plaintiffs as well as other interested parties and afforded plaintiffs ample opportunity to be heard at a meaningful time and in a meaningful manner, as they were entitled under the due process clause. The issue presented here, i.e., whether SBA is bound by its published regulation, 13 C.F.R. § 124.308(d) was neither raised nor addressed in *Information Systems*. No constitutional claim is raised here. Defendants' reliance on *Information Systems* is therefore misplaced.

In sum, defendants have failed to justify their non-compliance with their own regulation, 13 C.F.R. § 124.308(d).

For the above reasons, plaintiffs have shown a substantial likelihood of success on the merits of their claim that SBA has violated its own regulation, 13 C.F.R. § 124.308(d), by failing to accept or reject the requirements submitted by NASA and DOL within 15 working days after the offers were received.

As previously stated, plaintiffs seek two forms of relief with respect to this portion of their motion. The first, an order requiring SBA to decide within 15 working days after receiving an offering letter identifying a requirement on behalf of HCR whether it will accept or reject that requirement for the 2[8](a) program with an explanation of the basis for that decision, suffers from the same problem as plaintiffs' request for an order directing SBA to accept all "reasonable" SIC Codes. SBA is already required to follow its own regulations. The Court has already explained why it holds that SBA has violated section 124.308(d) with respect to the DOL and NASA contracts which should give SBA sufficient guidance with respect to future requirements submitted by federal procuring agencies. Until such time as plaintiffs assert that SBA has actually violated this regulation with respect to a specific requirement, there is no live case or controversy to be adjudicated.

█  Second, plaintiffs have requested an order directing SBA to immediately accept the NASA and DOL requirements into the 2[8](a) program. Because the DOL requirement has been withdrawn from the 2[8](a) program, there can be no direction by the Court that it be accepted into the program. However, because SBA has violated section 124.308(d) with respect to the NASA requirement, i.e., it has neither accepted nor rejected the requirement within 15 working days of its offer to SBA, nor has SBA requested and been granted an extension of time to make this decision, SBA has waived its right to reject the requirement. It is therefore appropriate to order SBA to accept the NASA requirement into the 2[8](a) program. However, such an order would constitute a final decision on the merits with respect to this portion of plaintiff's complaint. As the instant motion is a motion for preliminary injunction and the parties have not had an opportunity to submit final briefing on this matter, the Court will preliminarily enjoin defendants from rejecting the NASA requirement and set a prompt briefing schedule directing defendants to show cause why an order directing SBA to immediately accept the NASA requirement into the 2[8](a) program should not be issued.[18]

---

17. The ten day approval requirement was the predecessor to the current 15 day approval requirement of 13 C.F.R. § 124.308(d).

18. Final briefing on these matters and the other claims asserted in plaintiffs' amended complaint is scheduled to conclude on September 7, 1990 with a hearing to be held on September 17, 1990. It is impractical to wait until then to rule on plaintiffs' request for an order directing SBA

to accept the NASA requirement into the 2[8](a) program as NASA has advised that it must have the contract in place by September 3, 1990. Furthermore, at the time NASA offered the requirement to SBA, it also requested an expedited answer from SBA by April 2, 1990 (by now two and one-half months past), so that it could issue a request for proposals should SBA reject the offer for the 2[8](a) program. No purpose

## B. Irreparable Injury

■ Plaintiffs have also demonstrated that irreparable injury will be suffered if preliminary injunctive relief is not granted. Plaintiffs note that the delay caused by the appeal of the HCFA contract has caused that agency to not exercise the option year, worth $3.5 million, in favor of HCR. Barbara Robinson, President of HCR, states that an official at HCFA informed her that HCFA would have exercised the option year of the HCFA contract in favor of HCR had it not experienced such protracted delay over the SIC Code (by the time the appeal was dismissed, HCFA had removed the contract's option year from the 2[8](a) program and instead issued a Request for Proposal ("RFP"), on April 4, 1990, soliciting competitive bids).[19]

At the time the instant motion was filed, plaintiffs argued that the DOL and NASA requirements were rapidly approaching the same result as the HCFA requirement, i.e., they would be withdrawn from the 2[8](a) program, not only denying this benefit to plaintiffs but withdrawing it from all socially and economically disadvantaged concerns which benefit the fruits of this program. Plaintiffs' fear became a reality with respect to the DOL requirement, which was recently withdrawn from the 2[8](a) program.[20] When NASA submitted its offer to SBA on March 9, 1990, it re-quested an expedited response from SBA because NASA had established an April 2, 1990 target date for the release of a request for proposals in order to have a contract in place by September 3, 1990. The April 2, 1990 target date has come and gone with no decision from SBA. In light of the previous withdrawals of requirements from the 2[8](a) program by DOL and HCFA, plaintiffs' fear that the NASA requirement may suffer the same fate appears well-founded.[21]

Nonetheless, defendants contend that plaintiffs' claimed harm is speculative, i.e., plaintiffs have not shown that SBA will reject the NASA requirement and even if the requirement is not accepted, plaintiffs have not shown that the decision for the rejections was improper or based on some misconduct by SBA. Defendants also rely on *Delta Data Systems, Corp. v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984), which held that the threatened loss of a government contract cannot support injunctive relief "unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." However, the harm that confronts plaintiffs is not only that SBA will reject the NASA requirement, but that NASA will pull the requirement from the 2[8](a) program due to the

---

would be served by further delaying a final resolution of this matter.

**19.** First Robinson Affidavit, ¶ 3.

**20.** Prior to the withdrawal of the DOL requirement from the 2[8](a) program, an official of DOL informed Barbara Robinson, President of HCR, that DOL was reluctant to commit its time and resources to additional lengthy SIC Code disputes with SBA and did not believe that DOL would be able to satisfy SBA's numerous requests for additional information. First Robinson Aff., ¶ 9. The DOL contract had to be awarded by June 30, 1990. Two agency officials told HCR that they might not be able to complete the contract award and negotiation process by that time. Second Robinson Aff., ¶ 5 Robinson stated that the delays caused by SBA with respect to the DOL requirement threatened to upset an award to HCR. *Id.* ¶ 3. DOL officials described the situation with HCR as "unprecedented" in the obstacles encountered with SBA and believed that the award of the DOL contract to HCR was in jeopardy. *Id.* ¶¶ 4, 5. These concerns proved to be valid, as DOL withdrew its requirement from the 2[8](a) program in early June, nearly two months after it was offered to SBA.

**21.** Indeed, plaintiffs advised the Court on June 14, 1990 that NASA is suffering the same frustration that caused DOL to withdraw its requirement from the 2[8](a) program. *See* Plaintiffs' Notice to the Court, June 14, 1990; Affidavit of Barbara Robinson (June 14, 1990). According to Robinson, NASA's contracting officer, Richard Kall informed HCR that the situation between NASA and SBA is at a stand-off with no resolution in sight. NASA has therefore announced its requirement in the *Commerce Business Daily* as an alternate route, although it could be cancelled if SBA accepts the requirement into the 2[8](a) program. Kall also stated that despite the fact that time is short and NASA is frustrated with SBA's actions, SBA officials have given him no indication as to how long it will be before they take any action.

lengthy delays occasioned by SBA's multiple requests for further information. That this has already occurred with two previous requirements (offered by HCFA and DOL) supports plaintiffs' concern.

Finally, defendants note, correctly, that monetary loss can only constitute the irreparable harm necessary for injunctive relief when the loss "threatens the very existence of the movant's business. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.1985). Plaintiffs do not claim that HCR's very existence will be threatened if their motion is denied. Rather, they claim, persuasively, irreparable injury because the government is immune from damage suits (apart from bid preparation costs) and because HCR is due to graduate from the 2[8](a) program on October 12, 1990 that SBA's conduct will make more difficult HCR's transition out of the program. While this showing alone would be insufficient to justify preliminary injunctive relief, when coupled with plaintiffs' strong showing of likelihood of success on the merits and the other factors discussed immediately below, such relief is clearly appropriate.

For these reasons, plaintiffs have satisfied the second prong required for the issuance of a preliminary injunction—they will suffer irreparable injury if SBA is not required to accept the NASA requirement into the 2[8](a) program.

C. Harm to Third Parties and the Public Interest

The public interest is served by requiring an agency to follow its regulations. All procuring agencies as well as other participating 2[8](a) firms benefit when SBA is required to conduct its business in a fair and unbiased manner in accordance with its regulations. Furthermore, no third parties would be injured by directing SBA to accept the NASA requirement into the 2[8](a) program. Defendants have not demonstrated that SBA will be harmed nor have they claimed that another 2[8](a) firm is capable of, willing to, or interested in performing the services requested by NASA.

III. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that plaintiffs' motion for a preliminary injunction is denied in part and granted in part. It is

FURTHER ORDERED that because defendants United States Small Business Administration, Susan Engeleiter, Erline Patrick, Charles Freeman, Aubrey Rogers, Laurence Gaunt, and Joseph Anderson have failed to comply with 13 C.F.R. § 124.308(d) with respect to the requirement offered by NASA to SBA on March 9, 1990 for support of NASA's Occupational Health Office, they have waived their right to reject the requirement and are therefore preliminarily enjoined, for a period of thirty days, from rejecting the requirement offered by NASA on March 9, 1990 for support of NASA's Occupational Health Office. Pursuant to Fed.R.Civ.P. 65(c), plaintiffs shall post in the Clerk's Office a $1,000 cash or surety bond no later than June 19, 1990 at 3:00 p.m. failing which this injunction shall immediately stand dissolved. In the event of an appeal there shall be no stay of this order for the reasons recited in this memorandum opinion. It is

FURTHER ORDERED that defendants shall show cause, in writing, on or before June 22, 1990, why this Court should not issue an order directing SBA to immediately accept into the 2[8](a) program the requirement offered by NASA on March 9, 1990 for support of NASA's Occupational Health Office. Plaintiffs shall file their response to defendants' submission on or before June 27, 1990. There shall be no oral argument on these submissions.

This Order has been telephonically communicated to the parties this date.

IT IS SO ORDERED.