David M. **ESTABROOK**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 96–211C.

United States Court of Federal Claims.

July 6, 1998.

---

John P. Cummins, III, Fairfax, VA, for plaintiff.

David J. Gottesman, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Robert M. Hollis, Assistant Director, for defendant.

## OPINION

ANDEWELT, Judge.

### I.

In this contract action, plaintiff, David M. Estabrook, in his capacity as trustee in bankruptcy for DRG Funding Corporation (DRG), a mortgage lender that participated in mortgage insurance programs operated by the Federal Housing Administration (FHA) and a mortgage-backed securities program (MBS program) run by the Government National Mortgage Association (GNMA), seeks in excess of $16 million in damages resulting from the government's alleged breaches of contract. Plaintiff bases his claim on the government's alleged breach of 24 mortgage insurance contracts and related guaranty agreements with DRG under the MBS program. In its answer to plaintiff's complaint, defendant asserts a counterclaim seeking recoupment or set-off against any damages to which plaintiff is entitled. Defendant bases its counterclaim on expenses the Department of Housing and Urban Development (HUD) incurred as a result of DRG's failure to comply with certain requirements under the MBS and coinsurance programs. In its response to defendant's counterclaim, plaintiff asserts a series of affirmative defenses.

This action is before the court on the parties' cross-motions for partial summary judgment. In its motion, defendant seeks to strike plaintiff's affirmative defenses. Defendant argues that under the doctrines of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion), decisions in two prior proceedings between DRG and HUD bar plaintiff from presenting these affirmative defenses.[1] The first proceeding was before HUD's Board of Contract Appeals and resulted in DRG's exclusion from participation in transactions with HUD for a period of approximately four years. The second proceeding was brought by DRG in federal district court against HUD, FHA, and GNMA and resulted in DRG ultimately obtaining a judgment against HUD for underpaying interest on the debentures DRG received as insurance proceeds under HUD's mortgage insurance program. In his cross-motion, plaintiff requests that if the court invokes the doctrines of preclusion against plaintiff, the court apply the doctrine of merger to prevent defendant from raising its counterclaim for offset and recoupment. For the reasons set forth below, the parties' cross-motions for partial summary judgment are each denied.

### II.

The pertinent facts relating to the debarment proceeding are as follows. In a September 21, 1990, letter, HUD notified DRG that as a result of DRG's "serious" violations of MBS program requirements, HUD was considering debarring DRG and its affiliates indefinitely from participating in programs and procurement contracts with HUD and from participating in or being a principal with any executive agency. The letter also stated that pending resolution of the proposed debarment, DRG was suspended from participating in HUD programs. In response to this letter, DRG sought a hearing on the suspension and proposed debarment pursuant to 24 C.F.R. § 24.313. On April 7, 1994, an Administrative Law Judge (ALJ) on HUD's Board of Contract Appeals issued a "DETERMINATION" in which she debarred DRG for five years, but counted toward that five-year period the nearly four years during which DRG had been suspended from participating in HUD programs. Hence, the debarment would run through

---

1. Plaintiff, as bankruptcy trustee for DRG, "is subject to all claims and defenses which might have been asserted against [DRG] but for the filing of the petition." *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

September 21, 1995, approximately 17½ months after the determination was issued.

Pursuant to 24 C.F.R. § 26.25(a), DRG requested the Secretary of HUD to review the ALJ's decision. The Secretary accepted DRG's appeal but prior to a hearing on the merits, entered settlement negotiations with DRG which culminated in the following settlement agreement:

### SETTLEMENT AGREEMENT

\* \* \* \* \* \*

WHEREAS, Judge Cooper issued her initial determination on April 7, 1994, holding that Respondents should be debarred up to and including September 21, 1995, giving credit for periods of their suspensions; and

WHEREAS, Respondents have filed an appeal of Judge Coopers's [sic] determination to the Secretary of HUD; and

WHEREAS, the parties desire to resolve and settle the claims raised in the proceeding without further litigation; and

WHEREAS, Respondents, by entering into this Settlement Agreement, do not admit liability on any issue, or admit any factual matter, contained in Judge Cooper's initial determination;

NOW, THEREFORE, the Department and the Respondents agree as follows:

### TERMS AND CONDITIONS

1. The suspension and debarment of Respondents will terminate upon the effective date of this Settlement Agreement.

\* \* \* \* \* \*

3. Respondents agree to dismiss their appeal with the Secretary of HUD upon execution of this Settlement Agreement.

\* \* \* \* \* \*

5. Respondents hereby agree that they will not bring suit against HUD for injunctive relief or for damages allegedly resulting from the suspension and debarment issued by the Department.

6. This Settlement Agreement is for the purpose of resolving the suspension and debarment action taken by the Assistant Secretary of HUD and does not affect any other matter and does not waive any rights or responsibilities of HUD or any other federal agency to investigate or bring other actions pursuant to its lawful authority.

The parties entered the settlement agreement on September 19, 1994, approximately one year before the expiration of the 17½-month debarment period ordered by the ALJ.

In its motion for partial summary judgment, defendant treats the ALJ's decision on debarment as a valid and final judgment by HUD in which the ALJ rejected the defenses that plaintiff now asserts as affirmative defenses in response to defendant's counterclaim. Defendant argues that the doctrines of res judicata and collateral estoppel preclude plaintiff from raising those same defenses in the instant action.

### III.

#### A.

 Under the doctrine of res judicata, also known as claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating [claims] that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The rationale behind the doctrine of res judicata is that "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

 In *Mosca v. United States*, 224 Ct. Cl. 678, 679, 650 F.2d 288 (1980) (citations omitted), the Court of Claims articulated the following requirements for a finding of res judicata: "(1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim

or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases." *See also DeVries v. United States,* 28 Fed.Cl. 496 (1993).[2] Res judicata is not limited exclusively to final judgments issued by courts but rather applies in appropriate cases to final judgments issued by federal agencies. In *Astoria Fed. Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), the Supreme Court stated:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, [86 S.Ct. 1545, 16 L.Ed.2d 642] (1966). Such response is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.

### B.

■ As noted above, the first requirement for a finding of res judicata under *Mosca* is that the decision for which res judicata effect is sought must be "a valid and final judgment." Herein, the action by HUD that served as the agency's final decision with respect to the DRG debarment proceeding was its entry into the settlement agreement.

Rather than constituting a rejection of the defenses raised by DRG in the debarment proceeding, the settlement agreement amounted to a decision by HUD not to submit the merits of the debarment dispute for further formal agency review. As quoted above, the settlement agreement was the product of the parties' "desire to resolve and settle the claims raised in the [debarment] proceeding without further litigation." Rather than expressing the conclusion that the defenses DRG had raised before the ALJ were not viable, HUD agreed to lift the suspension and debarment in exchange, *inter alia,* for DRG's promise not to bring suit against HUD seeking relief for the consequences of the suspension and debarment.

Defendant responds that DRG's request that the Secretary dismiss the appeal left the ALJ's decision intact as HUD's "valid and final judgment." But instead of restoring finality to the ALJ's prior judgment, the settlement agreement's subsequent dismissal of the appeal replaced the ALJ's decision as the final agency action with respect to the DRG debarment proceeding. In this regard, HUD's conclusions as reflected in the settlement agreement were very different from its conclusions as reflected in the ALJ's determination. For example, the ALJ had ordered debarment for an additional 17½ months, whereas the settlement agreement terminated DRG's debarment and suspension immediately.

Moreover, the terms of the settlement agreement appear to demonstrate the parties' understanding that HUD had abandoned the ALJ's position. First, as quoted above, rather than classifying the ALJ's decision as a final agency judgment, the settlement agreement refers to the ALJ's decision as an "initial determination." Second, rather

---

**2.** On the issue of whether two suits involve the same cause of action, in *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 478–79 (Fed.Cir.1991), the Court of Appeals for the Federal Circuit adopted the following approach of the Restatement (Second) of Judgments, § 24:

(1) [T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

than suggesting that the ALJ's decision could have res judicata or collateral estoppel effect, the settlement agreement seems to subsume the parties' understanding that DRG would not be bound by the ALJ's determination. The settlement agreement states that "by entering into this Settlement Agreement, [DRG does] not admit liability on any issue, or admit any factual matter, contained in [the ALJ's] initial determination." The parties reasonably would not have included this statement if they believed that by entering the settlement agreement, DRG was binding itself to the ALJ's resolution of legal and factual issues.

Defendant has not pointed to any authority in the controlling statutes or regulations that suggests that the ALJ's decision, subsequently countermanded by the settlement agreement, should serve as HUD's "valid and final judgment." 5 U.S.C. § 557(b) sets forth the general rule that "when the presiding [agency] employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of the agency, within the time provided by rule." Similarly, 24 C.F.R. § 24.314(c) (1994), in effect at the time DRG sought review of the ALJ's determination, provided that "[t]he hearing officer's determination shall be final unless, pursuant to 24 C.F.R. part 26, the Secretary or the Secretary's designee, within 30 days of receipt of a request decides as a matter of discretion to review the finding of the hearing officer." Herein, DRG timely requested the Secretary to review the ALJ's determination and, ultimately, the Secretary granted that request. Once the request for review is granted, the Secretary conducts a *de novo* review based on the record of the initial hearing and issues a new determination together with a full recitation of "the evidentiary grounds upon which the Secretary's determination is made." 24 C.F.R. § 24.314(e) (1994). Hence, under the applicable statutes and regulations, once the Secretary granted review of the ALJ's determination, that determination was no longer the final agency judgment.

To support its argument that HUD's dismissal of DRG's appeal left the ALJ's determination intact as the final agency judgment, defendant cites *U.S. Bancorp. Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Therein, after the Supreme Court granted Bancorp's petition for a writ of certiorari, the parties entered a settlement agreement which purported to moot the case. The Supreme Court, however, denied Bancorp's request for the Court to exercise its power under 28 U.S.C. § 2106 and vacate the Court of Appeals for the Ninth Circuit's affirmance of the district court's judgment. The Court explained that because vacatur is a form of equitable relief, before granting such relief, the court must determine that vacatur is in the public interest. The Court stated:

> As always when federal courts contemplate equitable relief, our holding must also take account of the public interest. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting).

*Bonner*, 513 U.S. at 26–27, 115 S.Ct. 386.

Defendant analogizes the settlement in *Bonner* after the Supreme Court had granted certiorari to HUD's settlement of its dispute with DRG after the Secretary had agreed to review the ALJ's determination. Defendant argues that just as the settlement in *Bonner* left the underlying Court of Appeals decision intact and available to support res judicata, so too should HUD's settlement with DRG in the debarment proceeding leave the underlying ALJ's determination intact and thus a proper basis for res judicata. This analogy, however, is flawed.

*Bonner* involved a court judgment that was in effect at the time the parties entered the settlement agreement, and that judgment was valid and binding unless reversed by the Supreme Court. The parties chose to forego Supreme Court review and instead enter a

private settlement agreement. Because a court judgment can be vacated only by a court with appropriate jurisdiction, that private agreement could not itself render the court judgment other than final. The Supreme Court explained that an agreement between the parties that a dispute is moot is not itself sufficient to justify vacatur of a judgment and that courts must instead assess the public interest. *See id.* at 29, 115 S.Ct. 386.

Rather than involving a court judgment, the instant case involves a decision by a federal agency. When the parties entered the settlement agreement, the ALJ determination existed and that determination would be a binding HUD decision if left in effect and not modified by HUD. But in granting DRG's appeal of the ALJ determination and in ultimately deciding to settle the case on grounds inconsistent with the ALJ's decision, HUD modified the ALJ determination. In *Bonner*, the entities that entered the settlement agreement did not possess authority to alter the final and valid court judgment, but herein one of the entities that entered the settlement agreement, HUD, possessed the authority to modify the ALJ's determination. Unlike the parties in *Bonner*, HUD not only was a party to the settlement agreement but also, through the ALJ, was the entity that had issued the initial debarment determination. Once HUD exercised its authority in a manner inconsistent with the ALJ's determination, that determination no longer could be considered a valid and final judgment of HUD. In other words, the parties to a suit cannot agree to alter a court's final judgment, but an agency certainly has the authority, consistent with applicable statutes and regulations, to agree to reject a prior determination within the agency by entering into a settlement inconsistent with that prior decision. HUD, in effect, exercised that authority here. Hence, the ALJ's determination is not a valid and final judgment and cannot form the basis for a claim of res judicata.

## IV.

■■■■ "Under the doctrine of issue preclusion, traditionally called 'collateral estop-pel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed. Cir.1984) (citing *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983)). "Generally, the doctrine of issue preclusion will prevent a party from relitigating an issue that the party has already litigated and lost." 18 James W. Moore, *Moore's Federal Practice* § 132.01[2] (3d ed. 1998). The Supreme Court described the derivation and purpose of collateral estoppel as follows:

> Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel ... serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

*United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (citations omitted) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); *see also Arkla, Inc. v. United States*, 37 F.3d 621, 623 (Fed.Cir.1994), *cert. denied*, 514 U.S. 1035, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995).

■■■■ In *Mother's Restaurant*, 723 F.2d at 1569, the Court of Appeals for the Federal Circuit articulated the following four requirements for issue preclusion:

(1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action [and had a full and fair chance to litigate].

As noted in *Astoria Federal*, 501 U.S. at 107, 111 S.Ct. 2166, collateral estoppel applies not only to court judgments but also "to those

determinations of administrative bodies that have attained finality."

■■■ Defendant's attempt to apply collateral estoppel to bar plaintiff's affirmative defenses suffers from the same flaw as defendant's proposed application of res judicata. The ALJ's determination does not constitute HUD's final judgment. Rather, HUD in effect rejected the ALJ's position and settled the debarment dispute in a manner inconsistent with the ALJ's proposed resolution. In light of HUD's rejection of the ALJ's ultimate determination, even assuming that in the debarment proceeding the ALJ had resolved adversely to plaintiff the identical issues that plaintiff presents herein in its affirmative defenses,[3] this would not mean that in reaching the settlement agreement, HUD also had resolved those same issues adversely to plaintiff. Hence, regardless of whether the determination of the issues defendant now seeks to preclude was "necessary and essential" to the ALJ's judgment, plaintiff may raise those issues here because HUD itself rejected that judgment. Therefore, defendant has not established the basis for collateral estoppel.

## V.

■■■ The second proceeding upon which defendant relies in seeking the application of res judicata is a federal district court action DRG brought against HUD, FHA, and GNMA. In that suit, DRG sought a declaratory judgment to resolve a dispute concerning when interest begins to run on certain debentures issued by HUD in settlement of claims under HUD's coinsurance program. DRG claimed that as a result of HUD's determination to pay interest on DRG's debentures from the date of settlement rather than from the date of default, DRG's net worth fell below the requirement for participation in GNMA's MBS program. The district court entered judgment in favor of the government, *DRG Funding Corp. v. Secretary, HUD,* 1988 WL 93464 (D.D.C. Aug. 24, 1988), but the Court of Appeals for the District of Columbia Circuit reversed, 898 F.2d

205 (D.C.Cir.1990), and on remand, the district court entered judgment in DRG's favor in the amount of $4,379,745.

In its motion for partial summary judgment, defendant seeks application of res judicata to prevent plaintiff from raising any claim or defense pertaining to the underpayment of debenture interest. Defendant characterizes the instant action as seeking additional relief from defendant based upon the same debenture interest underpayments covered in the prior litigation. Plaintiff, however, responds that the 24 mortgage insurance contracts and related guaranty agreements for which plaintiff seeks compensation in the instant action are separate from the nine contracts on which DRG prevailed in the district court action. If plaintiff is correct, then the second requirement in *Mosca* would not be satisfied because the instant suit would not "involve the same claim or cause of action as in the prior decision." Each contract represents a distinct government legal obligation and plaintiff was not obliged to raise all of the issues relating to all of the distinct contracts in a single action.

Summary judgment is warranted where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Defendant has not demonstrated that plaintiff is incorrect in his conclusion that the instant action covers different contracts from those involved in the district court action. Hence, a material issue of fact exists which precludes a grant of summary judgment based on application of res judicata. Defendant's motion for partial summary judgment therefore must be denied. Because the court is denying defendant's motion, plaintiff's cross-motion for partial summary judgment, which asks for

---

**3.** Plaintiff disputes that in the debarment proceeding the ALJ resolved adversely to plaintiff the issues now raised in plaintiff's affirmative defenses. Because the court concludes that the

ALJ's determination does not constitute HUD's final judgment, the court need not address this issue.

relief only if defendant prevails on its motion for summary judgment, is denied as moot.

## Conclusion

For the reasons set forth above, the parties' cross-motions for partial summary judgment are each denied. On or before August 6, 1998, the parties shall file a status report, jointly or separately, proposing scheduling for further proceedings in this action.

IT IS SO ORDERED.