# United States Court of Appeals for the Federal Circuit

06-1207

SUBURBAN MORTGAGE ASSOCIATES, INC.,

Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
Alphonso Jackson, SECRETARY OF HOUSING AND URBAN DEVELOPMENT,
FEDERAL HOUSING ADMINISTRATION and
John Weicher, ASSISTANT SECRETARY FOR HOUSING/FHA COMMISSIONER,

Defendants-Appellants.

.

Michael J. Schaengold, Patton Boggs LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was Douglas C. Proxmire.

Mark R. Freeman, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellants. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Michael S. Raab, Attorney.

Appealed from: United States District Court for the District of Columbia

Judge Henry H. Kennedy, Jr.

# United States Court of Appeals for the Federal Circuit

06-1207

SUBURBAN MORTGAGE ASSOCIATES, INC.,

Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
Alphonso Jackson, SECRETARY OF HOUSING AND URBAN DEVELOPMENT,
FEDERAL HOUSING ADMINISTRATION and
John Weicher, ASSISTANT SECRETARY FOR HOUSING/FHA COMMISSIONER,

Defendants-Appellants.

_____

DECIDED: March 12, 2007

_____

Before RADER, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

PLAGER, <u>Senior Circuit Judge</u>.

This case requires us to reexamine the jurisdictional boundary between the Tucker Act and the Administrative Procedure Act, as that boundary is understood in the light of the Supreme Court's decision in <u>Bowen v. Massachusetts</u>.[1]  The case began as a dispute between plaintiff Suburban Mortgage Associates, Inc. ("Suburban"), and defendants, the United States Department of Housing and Urban Development ("HUD") et al. ("Government"),[2] with regard to a contract for insurance.  Plaintiff sued the Government in the United States District Court for the District of Columbia.  The suit

---

[1]    487 U.S. 879 (1988).

[2]    The other defendants are the Federal Housing Administration ("FHA"), which is a subagency of HUD; Alphonso Jackson, Secretary of HUD; and John Weicher, Assistant Secretary for Housing/FHA Commissioner.

was cast in part as an action for specific performance of the contract and in part as a declaratory judgment action. The relief sought was to require the Government to perform its contract obligations so that Suburban Mortgage could get the money allegedly due it under the insurance agreement.

The action quickly morphed into a dispute over what court had been authorized by Congress to hear the case: was it the district court (the plaintiff's choice) or was it the United States Court of Federal Claims (the Government's choice)? The Government forced the issue by moving in the district court to have that court either dismiss the entire case or transfer it from the district court to the Court of Federal Claims. The district court denied the Government's motion.

Litigation over where to litigate is the unfortunate consequence of the complex of statutes and courts that comprise the federal system. "Nothing is more wasteful than litigation about where to litigate, particularly when the options are all courts within the same legal system that will apply the same law." Bowen, 487 U.S. at 930 (Scalia, J., dissenting). This court plays a role in such litigation. When a district court denies a motion to transfer an action to the Court of Federal Claims as provided by 28 U.S.C. § 1631, an interlocutory appeal from such a denial may be taken to the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1292(d)(4)(A). The Government has exercised that right in this case.

For the reasons we shall explain, and despite Suburban's valiant effort to frame the suit as one for declaratory or injunctive relief, this kind of litigation should be understood for what it is. At bottom it is a suit for money for which the Court of Federal Claims can provide an adequate remedy, and it therefore belongs in that court. The

district court's determination to the contrary is reversed, and the matter is remanded to that court with instructions to either dismiss the suit in its entirety or transfer it to the Court of Federal Claims.

BACKGROUND

Suburban is a commercial mortgage[3] lender based in Maryland. In 1998 Suburban made a loan, secured by a mortgage on the subject property, to Hillside Nursing Home ("Hillside"), a now defunct nursing home and assisted living facility in Rhode Island.[4] To encourage development of such facilities for the elderly, Congress has authorized HUD to underwrite such loans, that is, to guarantee payment of the mortgage loan. See National Housing Act ("NHA") § 232, 12 U.S.C. § 1715w. In effect, the Government insures the loan. At Suburban's request, HUD, in exchange for premiums paid by Suburban, undertook that obligation with regard to the Hillside loan.

The agreement with HUD means that, should the borrower (Hillside) default on the underlying loan and the lender (Suburban) consequently incur loses, HUD will reimburse the lender pursuant to the terms of the insurance agreement. In order to collect the insurance proceeds when there has been a default by the borrower, the lender must first transfer its interest in the mortgage and mortgaged property to HUD. The lender has the option of foreclosing and taking title to the property, then transferring

---

[3] Although in common parlance the term 'mortgage' is often used to refer to the entire loan transaction, technically a mortgage is only the security interest in property conveyed to a lender as security for a loan made to the property owner; the loan itself is a separate part of the transaction. See Black's Law Dictionary 1031 (8th ed. 2004).

[4] There were two related Hillside entities involved. For purposes of this opinion it is not necessary to differentiate among them. We will follow the trial court's lead and for simplicity refer to them collectively as "Hillside."

the property to HUD, 24 C.F.R. § 207.258(c),[5] or directly assigning the defaulted note and mortgage to HUD, 24 C.F.R. § 207.258(b).  In either case, HUD pays the lender the outstanding debt the borrower owed, less certain charges.  24 C.F.R. § 207.259.

In this case, the nursing home (Hillside) defaulted on its mortgage loan. Thereafter, Suburban notified HUD that it wished to exercise its contractual right under 24 C.F.R. § 207.258(b) to assign the defaulted Hillside mortgage to HUD.  HUD, however, declined to accept assignment.  Under HUD's statutory authority for these insurance agreements, there is an incontestability clause that generally precludes HUD from challenging its duty to pay.  See NHA § 203(e), 12 U.S.C. § 1709(e).  However, an exception to that clause exists when the agreement involves "fraud or misrepresentation on the part of [the lender]."  Id.  In this case, HUD thought it had sufficient reason to

---

[5]     The regulations in 24 C.F.R. Part 207, setting out the contract rights and obligations applicable to multifamily housing mortgage insurance, see NHA § 207, also apply to mortgage insurance for nursing homes pursuant to the section 232 mortgage insurance program.  24 C.F.R. § 232.251.

believe that Suburban had committed fraud or made material misrepresentations to HUD.[6]

An extensive period of negotiation between the parties proved fruitless. Suburban then sued HUD in the District Court for the District of Columbia, asserting jurisdiction under 28 U.S.C. § 1331 as well as the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Fifth Amendment to the United States Constitution. The complaint contained two counts.

The first count, entitled "Declaratory Judgment: for HUD to comply with its obligations pursuant to § 232 of the NHA," asked the district court to declare HUD's actions unlawful and to order HUD to perform its duties under the agreement, specifically, to accept assignment of the loan with ultimate reimbursement of the loan balance to Suburban. Echoing the language of the APA, Suburban alleged that the Government, by denying its assignment, acted arbitrarily, capriciously, and in violation of Suburban's due process rights under the Fifth Amendment. The second count, entitled "Breach of Contract: Request for Specific Relief under § 702 of the APA," asked

---

[6] The Government's concern related to the actions of one Antonio L. Giordano, whom the Government believed owned or controlled both Suburban Mortgage and the Hillside Nursing Home, and that fraudulent conduct by him caused Hillside's failure. Subsequent to the argument in this case, and in a series of letters filed pursuant to Fed. R. App. P. 28(j), both the Government and Suburban Mortgage have advised this court regarding the guilty plea of Mr. Giordano to a charge of equity-skimming and his indictment on other charges, relating to the Hillside Nursing Home among other properties. Suburban alleges that Mr. Giordano never "owned or controlled" Suburban Mortgage, and though at one time he owned 50% of the company he was not its president or chair of its board, and his conduct cannot be imputed to Suburban Mortgage. The trial court in its opinion detailed other Suburban Mortgage business activities that had alerted HUD to a problem. Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev., No. 05-00856, 2005 WL 3211563, at *4 (D.D.C. Nov. 14, 2005). The truth of these matters is not directly relevant to the jurisdiction question before us, and remains to be determined on the merits by a court of competent jurisdiction.

the court for "specific relief in the form of payment of the insured loan amount" and reimbursement of certain taxes and fees as losses plaintiff suffered because the Government allegedly did not perform its duties under the insurance contract.

The Government moved in the district court to dismiss the suit for lack of subject matter jurisdiction on the grounds that the suit was basically a contract action, and therefore can only be heard in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). As an alternative to dismissal, the Government requested that the district court transfer the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

In ruling on the motion, the district court looked for guidance to the precedent of its regional circuit, the United States Court of Appeals for the District of Columbia Circuit. The district court recognized that it could exercise subject matter jurisdiction over claims against the Government only if a plaintiff identifies an explicit waiver of sovereign immunity. Citing Transohio Savings Bank v. Office of Thrift Supervision, 967 F.2d 598, 607 (D.C. Cir. 1993), the court noted that the APA provides the necessary waiver of sovereign immunity for challenges to agency action, subject to three exceptions found in 5 U.S.C. §§ 702 and 704: "the APA excludes from its waiver of sovereign immunity (1) claims for money damages, (2) claims for which an adequate remedy is available elsewhere, and (3) claims seeking relief expressly or impliedly forbidden by another statute." Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev., No. 05-00856, 2005 WL 3211563, at *6 (D.D.C. Nov. 14, 2005). The court then examined Suburban's claims in light of these exceptions.

With regard to Count II of the complaint, the district court viewed that as a contract claim asking for "essentially 'the classic contractual remedy of specific performance.'" Id. at *8 (citing Spectrum Leasing Corp. v. United States, 764 F.2d 891, 894 (D.C. Cir. 1985)). The court read the relevant precedent as precluding it from hearing contract claims against the Government, whether for money damages or specific relief, because the Tucker Act "impliedly forbids" (as that term is used in the APA) any such relief by district courts. Id. (citing Transohio, 967 F.2d at 609; Sharp v. Weinberger, 798 F.2d 1521, 1524 (D.C. Cir. 1986)). Applying this case law, the district court concluded that the APA did not waive sovereign immunity for Count II, and accordingly that Count II was outside of its jurisdiction.

The district court viewed Count I differently. With regard to the first exception limiting the APA's waiver of sovereign immunity, the district court cited Bowen v. Massachusetts for the proposition that a claim for money is not necessarily a claim for "money damages" as that term is used in the APA. Citing Maryland Department of Human Resources v. Department of Health and Human Services, 763 F.2d 1441, 1446 (D.C. Cir. 1985), the court drew a distinction based on the *purpose* behind the payment sought: is the plaintiff seeking money damages "to substitute for a suffered loss," or is the plaintiff seeking specific relief in the form of money, i.e., "the very thing to which he was entitled"? Suburban Mortgage, 2005 WL 3211563, at *6. Although Suburban characterized its requested relief in injunctive terms, the court recognized that Suburban would recover money from HUD if it prevailed. Nevertheless, the court concluded that any such recovery would be money that HUD was obligated to pay under the

agreement. Suburban therefore was seeking specific relief in the form of money to which it was entitled, rather than money damages.

Turning to the second exception, the district court determined that Suburban Mortgage did not have an adequate remedy in the Court of Federal Claims. While some of plaintiff's claimed losses could be reduced to a monetary sum, the district court concluded that concerns about possible bankruptcy, loss of reputation, and lost future profits could only be addressed through injunctive relief.

Finally, the district court held that Count I did not seek relief expressly or impliedly forbidden by the Tucker Act. The Government had argued that the claim was a disguised contract claim and therefore, like Count II, could not be adjudicated in district court. But the court concluded that plaintiff's allegations regarding HUD's arbitrary refusal to accept assignment because of unproven fraud suspicions found their source in the statutes and constitutional provisions cited by Suburban, and not the underlying contract for insurance that it had with HUD. The district court therefore granted the Government's motion to dismiss Count II, and denied the motion to dismiss Count I or to transfer the remaining case to the Court of Federal Claims.

In the same order, the district court granted Suburban's motion to require HUD to file with the court a copy of the administrative record on which it relied in making its determination with respect to the election of assignment. Since an APA suit basically challenges an agency's actions, the agency's administrative record of what it has done is the record on which the court bases its decision. The effect of filing the agency's administrative record in the matter would be to provide Suburban with what amounts to discovery of the Government's case, i.e., whatever information the Government may

have for suspecting fraud. The Government, however, would not have an equal opportunity for discovery of the facts known to Suburban, the kind of discovery that could be had in a normal civil suit, including a contract dispute in the Court of Federal Claims.

The Government resisted producing the administrative record under the circumstances and promptly took an interlocutory appeal of the Count I jurisdictional issue to this court, as it is entitled to do pursuant to 28 U.S.C. § 1292(d)(4)(A).

DISCUSSION

A.

Sovereign immunity—the notion cherished by the medieval English Kings and Queens that they could do no wrong, at least no wrong correctable in their own courts—is a privilege still granted by the federal courts to the Royals' successor, the United States Government. One consequence of this doctrine is that, absent a Constitutional grant of authority, if one wishes to sue the United States for a wrong committed by one of its agents (and agencies), one must find an appropriate Act of Congress that waives the Government's immunity from suit for that particular wrong.

If the suit is a civil action, other than in tort, there are two general statutes that waive sovereign immunity. One is the Tucker Act, the origins of which go back to the late 1800s.[7] In the Tucker Act, Congress recognized that for a variety of reasons it was

---

[7] The Tucker Act authorizes the Court of Federal Claims to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

in the Government's interest to waive immunity and to allow people to bring suit against the Government for money they believed was owed to them. For one thing, it relieved Congress of the hassle of having to enact special bills to resolve run-of-the-mill disputes. For another, in the absence of such a waiver, the Government's cost of doing business would be greater since parties contracting with the Government would understand that they had to factor in the costs of arbitrary bureaucratic behavior for which, absent the waiver, no judicial remedy would be available. The Tucker Act both waives sovereign immunity for, and grants the Court of Federal Claims exclusive jurisdiction over, actions for money damages of more than $10,000. 28 U.S.C. § 1491(a)(1).[8]

The other general statute is the Administrative Procedure Act ("APA"). Enacted to provide for judicial review in the federal district courts of certain agency actions, the Act was amended in 1976 to expressly waive sovereign immunity for actions against the Government. 5 U.S.C. §§ 701-06, amended by Pub. L. No. 94-574, 90 Stat. 2721 (1976). Though the APA itself does not provide an independent grant of subject matter jurisdiction, the general federal question jurisdictional statute, 28 U.S.C. § 1331, confers authority on the district courts to hear APA cases.[9]

---

[8]    "It is often assumed that the [Court of Federal Claims] has exclusive jurisdiction of Tucker Act claims . . . . That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the [Court of Federal Claims]. Rather, that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the [Court of Federal Claims]." Bowen, 487 U.S. at 910 n.48. There is also a statute, 28 U.S.C. § 1346(a)(2), known as the Little Tucker Act, under which the Court of Federal Claims and the district courts have concurrent jurisdiction over claims not exceeding $10,000.

[9]    Bowen, 487 U.S. at 891 n.16.

Congress reconciled these two general statutory waivers by providing in the APA the three specific limitations noted by the trial court: (1) a suit under the APA can only seek relief other than "money damages," 5 U.S.C. § 702; (2) the suit would lie under the APA only if there were "no other adequate remedy" in a court, 5 U.S.C. § 704; and (3) the suit could not be maintained if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702. With these limitations, the APA and the Tucker Act were understood to cover quite different challenges to Government action. A plaintiff seeking relief, other than monetary relief, from a disputed government agency action could challenge that action in district court under the APA. In contrast, a suit requesting relief in the form of a money judgment against the Government could be brought in the Court of Federal Claims under the Tucker Act, but not in a district court.[10] For jurisdictional purposes between the district courts under the APA and the Court of Federal Claims under the Tucker Act, the money distinction seemed to provide a relatively watertight barrier.

In 1988 the barrier sprang a leak, a leak that has threatened to become a gusher. Bowen v. Massachusetts, 487 U.S. 879 (1988), is the source of the leak. In that case, the Commonwealth of Massachusetts brought suit challenging a decision by the Secretary of Health and Human Services refusing to reimburse the state for certain Medicaid expenditures. Under the Medicaid program, the Government makes quarterly advance payments to the state in anticipation of future reimbursable costs. When the Secretary disallowed costs as not covered by the program, the result was a withholding

---

[10] See supra note 8 for the Little Tucker Act exception for claims not exceeding $10,000.

of funds from future advances to compensate for past overpayments and to preclude future overpayments.

Massachusetts filed suit in federal district court requesting declaratory and injunctive relief setting aside the Secretary's decision. The state invoked federal question jurisdiction pursuant to 28 U.S.C. § 1331 and alleged that the APA waived the Government's immunity. The Government challenged the district court's authority to hear the case, arguing that the Claims Court[11] had exclusive jurisdiction over the state's claim because it was one for money in excess of $10,000.

The Supreme Court agreed with the district court and the First Circuit that the APA provided a waiver of sovereign immunity for the state's claim and that the case was properly before the district court. In its opinion, the Court first analyzed whether the claim was one for "money damages," which would take it outside the purview of the APA under 5 U.S.C. § 702. Although the ultimate relief sought by the state was monetary, that did not necessarily mean it could be described as "money damages." Bowen, 487 U.S. at 893. The Court understood the term "money damages" to mean "*compensation* for the damage sustained by the failure of the Federal Government to pay as mandated." Id. at 900. In contrast, the state was seeking to "enforce the statutory mandate itself, which happens to be one for the payment of money." Id. Because the state sought to recover money it thought it was entitled to under the relevant statutes, the state's claim was for "specific relief" rather than "money damages." Id. at 900-01. The dissent found this distinction unconvincing. Id. at 917-21 (Scalia, J., dissenting).

---

[11] The Claims Court is now known as the Court of Federal Claims. Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902(a), 106 Stat. 4506, 4516.

The Court next addressed the Government's argument that the state's APA claim was barred under 5 U.S.C. § 704 because there was an "adequate remedy" in the Claims Court. The Court rejected the Government's position on the ground that the Claims Court had no power to grant equitable relief. Id. at 905. The state sought declaratory and injunctive relief requiring the Secretary to modify future Medicaid practices. Since the Medicaid program was ongoing and a judgment in the case would require future cooperation between the parties, the Court was "not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties." Id. The dissent disagreed with the majority on this issue as well, stating that a successful claim for money damages in the Claims Court would have precedential as well as collateral estoppel effect and therefore would be as effective in establishing the state's future rights as would a declaratory judgment in district court. Id. at 926-27 (Scalia, J., dissenting). In the dissent's view, "[s]ince [the majority's] reasoning cannot possibly be followed where it leads, the jurisdiction of the Claims Court has been thrown into chaos." Id. at 929 (Scalia, J., dissenting).

B.

As the dissent predicted, the Bowen case has generated much confusion regarding the jurisdiction of the courts, as well as adverse commentary.[12] In 1988, the same year Bowen was decided, Congress attempted to bring some order to the

---

[12] For a thorough review of the Bowen case and its consequences, with extensive citation, see Gregory C. Sisk, The Tapestry Unravels: Statutory Waivers of Sovereign Immunity and Money Claims Against the United States, 71 Geo. Wash. L. Rev. 602, 707 (2003) ("The Supreme Court by overruling Bowen v. Massachusetts, the Federal Circuit by limiting it, or the Congress by modest legislative intervention should act to restore clarity and stability to jurisdictional lines.").

process.  It enacted a statute providing that, when a district court order grants or denies a motion to transfer a suit against the Government to the Court of Federal Claims, an interlocutory appeal can be taken by either plaintiff or the Government.   Pub. L. No. 100-702, Title V, § 501, 102 Stat. 4652 (1988) (codified at 28 U.S.C. § 1292(d)(4)). Prior to then, parties could not obtain appellate review of the jurisdictional question until the case had been tried on the merits, possibly in the wrong trial court.  To ensure uniform adjudication of all Tucker Act issues in a single forum, when Congress established interlocutory review of these jurisdictional disputes it assigned the Federal Circuit exclusive jurisdiction over such appeals.  H.R. Rep. No. 100-889, at 52 (1988), as reprinted in 1988 U.S.C.C.A.N. 5982, 6012.

One consequence of the Bowen case has been to create a sort of cottage industry among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits for declaratory or injunctive relief without mentioning the money. If successful, a plaintiff could have the case heard under the APA in one or another district court, with appeal to a regional circuit, rather than in the Court of Federal Claims, where money claims against the Government are routinely heard and decided, with appeal in the Federal Circuit.  This court has had several opportunities to deal with such attempts, and to interpret and apply Bowen.

To thwart such attempted forum shopping, our cases have emphasized that in determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim.  We have cautioned litigants that dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an

APA case.  See, e.g., Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1328 (Fed. Cir. 2004) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." (quoting Rogers v. Ink, 766 F.2d 430, 434 (10th Cir. 1985))); Consol. Edison Co. of N.Y., Inc. v. United States, 247 F.3d 1378, 1385 (Fed. Cir. 2001) ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims."); Brazos Elec. Power Coop., Inc. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form."); Nat'l Ctr. for Mfg. Scis. v. United States, 114 F.3d 196, 199 (Fed. Cir. 1997) ("NCMS") ("Notwithstanding the imprecision of the complaint, we therefore 'look to the true nature of the action in determining the existence or not of jurisdiction.'"  (quoting Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994))); Kanemoto v. Reno, 41 F.3d 641, 646 (Fed. Cir. 1994) ("'A party may not avoid the [Court of Federal Claims'] jurisdiction by framing an action against the federal government that appears to seek only equitable relief when the party's real effort is to obtain damages in excess of $10,000.'" (quoting Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1099 (9th Cir. 1990))).

Once we discern the true nature of a plaintiff's claim as a claim for money, because of Bowen we still must determine whether the claim is excluded from APA jurisdiction by the limitations in 5 U.S.C. §§ 702 and 704.  Bowen and several cases following Bowen begin their analysis by asking first whether the claim is for other than

"money damages," as that term is used in 5 U.S.C. § 702, and thus whether the suit meets this requirement for district court jurisdiction. The problem with that approach is that it turns on a linguistic distinction between 'money damages' and a claim that happens to be for money, a distinction that is at best murky, and at worst without a difference.

Our cases, and Congress's purpose in giving this court jurisdiction over these interlocutory appeals, dictate that the better course is to ask first whether the cause is one over which the Court of Federal Claims has jurisdiction under the Tucker Act. The analysis begins, then, with the question raised by 5 U.S.C. § 704—is there an "adequate remedy" in a court other than the district court, that is, can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?

One reason for beginning the analysis with the "adequate remedy" issue is that its resolution often will be dispositive. If the suit is at base a claim for money, and the relief available through the Court of Federal Claims under the Tucker Act—a money judgment—will provide an adequate remedy, the inquiry is at an end. There is no need to address the § 702 "money damages" limitation because § 704 precludes adjudication under the APA. A number of cases have recognized the value in this approach. See Christopher Vill., 360 F.3d at 1327-29 (determining there was an adequate remedy in the Court of Federal Claims without analyzing the "money damages" limitation); Consol. Edison, 247 F.3d at 1382-83 (declining to address the "money damages" issue because the Court of Federal Claims would provide an adequate remedy); Kanemoto, 41 F.3d at 644 (treating the "adequate remedy" issue as a threshold question); see also Randall v.

United States, 95 F.3d 339, 346 (4th Cir. 1996) ("[T]o determine whether Plaintiff's suit is cognizable under the APA, the court must *first* examine whether he has an available remedy under the Tucker Act." (emphasis added)).

Another reason it is preferable to start with the § 704 "adequate remedy" limitation rather than the "money damages" limitation found in § 702 is the way the Supreme Court has read the § 702 limitation. As earlier noted, the Supreme Court in Bowen interpreted the § 702 term "money damages" to mean that not all monetary relief is "money damages," an interpretation that opened the way to linguistic manipulation and the consequent opportunity for forum shopping. As the Court explained, if the plaintiff requests funds to which a statute allegedly entitles it, rather than money in compensation for sustained losses, the relief sought is something other than "money damages." Bowen, 487 U.S. at 900; see also NCMS, 114 F.3d at 200; Kanemoto, 41 F.3d at 644; Katz, 16 F.3d at 1208-09. Thus if a plaintiff seeks a money judgment but a court concludes that the relief sought is other than "money damages," the § 702 limitation is not an impediment to APA review by the district court.

However, even if the plaintiff escapes the § 702 limitation in this manner, the inquiry cannot end there because a claim seeking monetary relief, however defined, may nevertheless be within the jurisdictional scope of the Tucker Act.[13] A court must therefore undertake the second analytical step—determining whether there is an adequate remedy available under the Tucker Act in the Court of Federal Claims for the sought-after monetary relief. See NCMS, 114 F.3d at 200-01; Katz, 16 F.3d at 1209. If

---

[13]   "The jurisdiction of the Claims Court, however, is not expressly limited to actions for 'money damages,' . . . whereas that term does define the limits of the exception to § 702." Bowen, 487 U.S. at 900 n.31.

the jurisdictional requirements of the Tucker Act are satisfied, i.e., the claim is for more than $10,000 and is based on a money-mandating statute, regulation, or constitutional provision, or an express or implied contract with the Government, see Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part), and if the Court of Federal Claims through a money judgment can provide an adequate remedy under the Tucker Act, § 704 bars the district court from hearing the case because it belongs in another court—the Court of Federal Claims. Again, the same conclusion could have been reached without first addressing the "money damages" limitation of § 702. See Consol. Edison, 247 F.3d at 1382-83 (acknowledging that plaintiff might satisfy § 702 by seeking monetary relief other than "money damages," but declining to address the issue because the Court of Federal Claims would provide an adequate remedy).

In sum, when the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the Government, then, for the reasons explained, a straightforward analysis calls for determining whether the case falls within the jurisdiction of the Court of Federal Claims. If that court can provide an adequate remedy—if a money judgment will give the plaintiff essentially the remedy he seeks—then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act. There is no need at that point to even address the other APA limitations, the "money damages" and the "expressly or impliedly forbids" provisions. The three limitations function in the disjunctive; the application of any one is enough to deny a district court jurisdiction under the APA.

C.

Applying these concepts to the case before us, it is clear that the proper forum for Suburban's claim is the Court of Federal Claims. In Count I of the complaint, Suburban seeks a declaration that HUD acted unlawfully when it refused to accept assignment of the mortgage and defaulted loan. Though the claim is styled as one for declaratory relief, Suburban in essence is seeking to obtain the financial benefit of a prior contract-based obligation that allegedly has not been honored by the Government. Suburban contracted with HUD for mortgage insurance. Suburban filed a claim under the insurance policy; HUD refused to pay the claim. Suburban's ultimate goal now is to recover the insurance proceeds. We therefore agree with the Government that despite the form of the complaint, Suburban's claim is in substance a contract-based action asking for monetary relief from the Government.

With that in mind, we must decide whether the Court of Federal Claims can provide Suburban with an "adequate remedy" within the meaning of § 704. We begin with the proposition that "[t]he availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for § 704 purposes." Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005) (citing Christopher Vill., 360 F.3d at 1327-29; Consol. Edison, 247 F.3d at 1382-84). The Government asserts, and Suburban does not dispute, that Suburban could have brought an action for breach of contract in the Court of Federal Claims. See Manhattan Sav. Bank v. United States, 557 F.2d 1388 (Ct. Cl. 1977); Estabrook v. United States, 41 Fed. Cl. 283 (1998); Fairington Apartments v. United States, 7 Cl. Ct. 647 (1985). As the Government suggests, if Suburban were to obtain a judgment for breach of

contract, the Court of Federal Claims could order payment of the insurance proceeds as a form of expectation damages, giving Suburban the benefits it expected to receive had the Government not breached the insurance contract. See Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (citing Restatement (Second) of Contracts § 344(a) (1981)). An adequate remedy is therefore presumptively available in the Court of Federal Claims.

Suburban relies on Bowen to support its contention that a money judgment from the Court of Federal Claims will not be adequate. But, as we have noted elsewhere, Bowen turned on the "complexity of the continuous relationship between the federal and state governments administering the Medicaid program," Consol. Edison, 247 F.3d at 1383, and the Court "linked its judgment to a specific set of circumstances" that are not present in most cases, id. at 1384. These circumstances include: Bowen was a dispute between two sovereigns—a state government and the federal government—implicating federalism issues; the dispute centered on the administration of a major federal grant, the Medicaid program, involving enormous sums of money and complex interactions between the governments and the beneficiaries; at issue were the institutional arrangements between these two governments; the governments were locked into a fabric of long-term administration of the program; and the money involved in the uncovered education services was a small fraction of the total reimbursement the state received each year for its Medicaid costs under the program. In addition, the Court's focus was on the statutory requirements set forth in this complex grant program— nowhere in Bowen did the Court make reference to the existence of any specific contract or express agreement defining the relationship between the parties.

Furthermore, unlike Bowen, this case does not involve a complex, ongoing relationship between plaintiff and the Government in which the plaintiff seeks declaratory or injunctive relief to modify the Government's *future* obligations under the program. Suburban does not seek to change any long-term future conduct by the Government. Even if we were to discount the point made by the dissent in Bowen, that a money judgment against the Government can impact on its future behavior through doctrines such as collateral estoppel, a judgment ordering prospective relief would not be necessary or appropriate.

The thrust of Suburban's claim is that HUD breached the insurance contract when it refused to accept assignment of the mortgage and pay Suburban the insurance proceeds. Accordingly, "[e]very legal issue that [Suburban] seeks to resolve in the district court could be . . . decided in a suit before the Court of Federal Claims." Consol. Edison, 247 F.3d at 1385. Nor are Suburban's concerns about possible bankruptcy, loss of reputation, and lost future profits a basis for saying that there is not an adequate remedy in the Court of Federal Claims. Those concerns can be alleged by any claimant seeking money from the Government for an allegedly wrongful failure to pay a claim; to the extent they have merit in a given case, money usually can assuage the wrong.[14]

We have considered the other arguments raised by Suburban, including its argument that it has been denied due process and that that alone entitles it to APA review in the district court. We agree with the Government that a claim that a government agency has violated a party's right to due process by refusing performance

---

[14] "[E]ven though a plaintiff may often prefer a judicial order enjoining a harmful act or omission before it occurs, damages after the fact are considered an adequate remedy in all but the most extraordinary cases." Bowen, 487 U.S. at 925 (Scalia, J. dissenting).

under a contract is substantively indistinguishable from a breach of contract claim. The process to which plaintiff is due on these facts is a post-deprivation suit for breach of the contract. See Lujan v. G&G Fire Sprinklers Inc., 532 U.S. 189, 196 (2001). We find these further arguments without merit. Because an adequate remedy is available under the Tucker Act in the Court of Federal Claims, this case cannot proceed in the district court under the APA.

D.

The district court in making its determination in this case sought guidance from and relied heavily on decisions from its regional circuit. The Government seemed to shape its case for dismissal on the same basis, arguing that because Suburban's claim arose out of a contract, there was no APA jurisdiction. The source for that argument is a line of cases in other courts of appeals, including the Court of Appeals for the District of Columbia, holding that claims based on contracts can only be brought in the Court of Federal Claims. See Transohio, 967 F.2d at 609-10; Sharp, 798 F.2d at 1523-24; Spectrum Leasing, 764 F.2d at 893-94; N. Side Lumber Co. v. Block, 753 F.2d 1482, 1485-86 (9th Cir. 1985); Megapulse, Inc. v. Lewis, 672 F.2d 959, 967 (D.C. Cir. 1982). The basis for this rule is the third limitation on the APA's waiver of sovereign immunity— waiver is not available "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Since the Tucker Act grants consent for suits based on contract, this has been interpreted by these other courts to preclude under the APA contract claims of any kind, either for damages or specific performance. This court has acknowledged the issue but not squarely addressed it. See, e.g., Katz, 16 F.3d at 1209. Since we conclude the case is better

decided under the limitation in § 704 of the APA, we need not address the argument further.[15]

Finally, the regional circuits are of course free to provide such guidance as they choose to the district courts in their circuits, and when the question of jurisdiction comes up outside of these interlocutory appeals, the district courts properly may look to the law of their circuit for guidance. But guidance from and reliance upon regional circuit law must take into account two considerations. First, since 1988 and the <u>Bowen</u> decision, there has been considerable development regarding this jurisdictional issue. The regional circuit court cases may be older cases, and indeed, as was the case here, some may have been decided before <u>Bowen</u>.

Second, and of equal if not greater importance, for almost twenty years this court has been tasked by Congress to be the exclusive arbiter of the issue when it is brought to us in these interlocutory appeals. We of course are bound to follow our own circuit law. District courts, as well as counsel for the parties, would be better able to predict the outcome of such appeals if they follow the same law.

CONCLUSION

The judgment of the district court is reversed. The matter is remanded with instructions to either dismiss Count I of the complaint or transfer it to the Court of Federal Claims.

<u>REVERSED and REMANDED</u>

---

[15] For a full discussion of the issue, see Richard H. Seamon, <u>Separation of Powers and the Separate Treatment of Contract Claims Against the Federal Government for Specific Performance</u>, 43 Vill. L. Rev. 155 (1998).